## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERIC R. KINZLER,**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  16-4243** |
| **FIRST NBC BANK HOLDING**<br>**COMPANY, ET AL.,**<br>        **Defendants** | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is Lead Plaintiffs'[1] Request for an Indicative Ruling Pursuant to Federal Rule of Civil Procedure 62.1, filed on January 28, 2021.[2] Approximately one week after the request was filed, Lead Plaintiffs filed in the Fifth Circuit the Appellants' Unopposed Motion for a Stay of Proceedings Pending the District Court's Consideration of their Motion to Open the Judgment.[3] The Fifth Circuit granted the motion, thus staying proceedings in that court and allowing this Court to consider the Rule 62.1 motion.[4] Defendants Ashton J. Ryan, Jr. and Mary Beth Verdigets filed oppositions in this Court,[5] and Lead Plaintiffs have filed a reply.[6]

---

[1] This action was filed by Eric R. Kinzler individually and on behalf of all others similarly situated who purchased First NBC Bank Holding Company shares between May 10, 2013 and April 8, 2016. R. Doc. 1. The trial court appointed a collection of institutional investors to be the "Lead Plaintiffs." R. Doc. 34. The Institutional Investor Group consists of the following Lead Plaintiffs as appointed by this Court: the Oakland County Employees' Retirement System and Voluntary Employees' Benefit Association, Plymouth County Retirement System, and Central Laborers' Pension Fund. R. Doc. 11 at p. 1; R. Doc. 34 at n.1. For ease of reference, the Court refers to them as "Lead Plaintiffs."

[2] R. Doc. 140-2. Also pending is Lead Plaintiffs' Motion from Relief of the Court's May 11, 2017 Judgment Pursuant to Fed. R. Civ. P. 60(b). Lead Plaintiffs move that the May 11, 2017 Judgment be vacated and Lead Plaintiffs be allowed to file a second amended complaint. R. Doc. 140. Because this matter is on appeal, the Court does not have jurisdiction to decide that motion without leave of the court of appeals. See note 88.

[3] *Cent. Laborers Pension Fund, et al. v. First NBC Bank Holding Co.*, No. 17-30443, Doc. 00515735497 (5th Cir. Feb. 5. 2021). The "Motion to Open the Judgment" refers to the Lead Plaintiffs' Rule 62.1 request for an indicative ruling pending in this Court.

[4] *Id.*, Doc. 00515737085.

[5] R. Docs. 154-56.

[6] R. Doc. 162.

## BACKGROUND

### I.    The Action in this Court

On May 5, 2016, a lawsuit was filed under the Private Securities Litigation Reform Act ("PSLRA") against First NBC Bank Holding Company ("First NBC"), Ashton J. Ryan, Jr., and Mary Beth Verdigets (collectively, "Defendants").[7] Lead Plaintiffs filed an amended complaint on December 5, 2016, adding Ernst & Young, LLP ("EY") as a defendant.[8] On April 28, 2017, for reasons stated on the record, the Defendants' and EY's Motions to Dismiss Amended Complaint for Failure to State a Claim[9] were granted.[10] The motions to dismiss challenged, *inter alia*, whether Lead Plaintiffs had adequately pleaded Defendants' and EY's scienter under the PSLRA.[11] In ruling on the motions to dismiss, the trial court examined whether the "complaint . . . contain[ed] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] Exacting pleading requirements are among the control measures Congress included in the PSLRA, which requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention "to deceive, manipulate, or defraud."[14] To demonstrate scienter, the PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the

---

[7] R. Doc. 1.

[8] R. Doc. 60.

[9] R. Docs. 74, 77, and 78.

[10] Minute Entry at R. Doc. 115.

[11] R. Doc. 114 at p. 37.

[12] *Gomilla v. Bracco Diagnostics, Inc.*, No. CV 18-10212, 2019 WL 2869077, at *1 (E.D. La. July 3, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

[13] *Id.*

[14] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 and n.12 (1976); *see* 15 U.S.C. § 78u-4(b)(1), (2).

defendant acted with the required state of mind."[15] In the Fifth Circuit, "[t]he required state of mind [for scienter] is an intent to deceive, manipulate, defraud or severe recklessness."[16] The trial court found the Lead Plaintiffs had not "under the jurisprudence and particularly the Fifth Circuit jurisprudence, pled with sufficient particularity the facts establishing that the defendants acted with the requisite level of scienter."[17] As a result, the motions to dismiss were granted, and on May 11, 2017, judgment was rendered in favor of Defendants and EY and against Lead Plaintiffs, dismissing Lead Plaintiffs' amended complaint with prejudice.[18]

## II.    The Bankruptcy of First NBC and the Appeal of this Court's Dismissal

On the day the judgment of dismissal was signed and filed into the record, May 11, 2017, First NBC commenced a voluntary bankruptcy proceeding under Chapter 11 of Title 11 of the U.S. Bankruptcy Code.[19] On May 24, 2017, the Lead Plaintiffs filed in this action their notice of appeal from the May 11, 2017 judgment of dismissal.[20] First NBC's bankruptcy petition was filed in the bankruptcy court between the time the judgment of dismissal was filed in this Court on May 11, 2017 and the time the notice of appeal was filed in this Court on May 24, 2017. On May 25, 2017, First NBC filed in this action its Notice of Automatic Stay and Suggestion of Bankruptcy for Defendant First NBC Bank Holding Company.[21] By the time the notice of automatic stay and suggestion of

---

[15] 15 U.S.C. § 78u-4(b)(2).
[16] *Owens v. Jastrow*, 789 F.3d 529, 535-36 (5th Cir. 2015) (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009) (internal quotation marks and citation omitted)).
[17] R. Doc. 114 at p. 39.  The trial court also ruled the Lead Plaintiffs had failed to plead an actionable misstatement or omission under the PSLRA. *Id.* at 39-40. This Court's analysis herein also applies to any argument as to that claim.
[18] R. Doc. 119.
[19] *In re First NBC Bank Holding Co.*, Bank. A. No. 17-11213 (E.D. La. Bankr. May 11, 2017), R. Doc. 1.
[20] R. Doc. 120.
[21] R. Doc. 121.

bankruptcy had been filed in this Court, the notice of appeal already had been filed at the Fifth Circuit, but no notice of the automatic stay was filed in the Fifth Circuit at that time.

On May 26, 2017, Lead Plaintiffs filed their appeal in the Fifth Circuit of the judgment of dismissal in favor of Defendants and EY.[22] On June 21, 2017, the Fifth Circuit issued a briefing notice to all parties.[23] The next day, June 22, 2017, First NBC filed its Notice of Bankruptcy in that court.[24] The Fifth Circuit immediately suspended briefing with a brief notice on the docket sheet, "BRIEFING SUSPENDED – in light of suggestion of bankruptcy of appellee First NBC Bank Holding Company. A/Pet's Brief deadlines canceled."[25] On the same date, although it is not reflected in the record, the Fifth Circuit asked for a monthly status report on the effect of the bankruptcy on the appeal.[26] On July 25, 2017, the Fifth Circuit informed the parties that monthly status reports were no longer necessary, as the Fifth Circuit would monitor the bankruptcy case itself and "continue to hold the case *in abeyance* while those proceedings are ongoing."[27]

On September 5, 2017, EY moved to sever Appellees First NBC, Ryan, and Verdigets from this appeal and allow EY and the Lead Plaintiffs to proceed, or, in the alternative, to sever First NBC alone from this appeal and allow the appeal to proceed with the remaining parties.[28] On September 15, 2017, Lead Plaintiffs opposed EY's motion to sever the appeal on the ground that the claims against all the Appellees were inextricably intertwined, presenting common questions of fact and law that could be

---

[22] *Cent. Laborers Pension Fund, et al. v. First NBC Bank Holding Co.*, No. 17-30443, Doc. 00514008620 (5th Cir. May 26, 2017).
[23] *Id.*, Doc. 00514042039.
[24] *Id.*, Doc. 00514044208.
[25] This Court notes that, legally, a "suspension" of briefing may not be equivalent to a "stay" of proceedings.
[26] The Fifth Circuit's later letter of July 25, 2017 references this letter.  *See* n. 27, *infra*.
[27] *Cent. Laborers Pension Fund, et al. v. First NBC Bank Holding Co.*, No. 17-30443, Doc. 00514087948, (5th Cir. July 25, 2017) (emphasis added).
[28] *Id.*, Doc. 00514143458.

resolved in one proceeding.[29] EY replied to the Lead Plaintiffs' opposition on September 22, 2017, arguing that, because EY was wholly unrelated to its co-defendants and the complaint contained separate allegations (and separate Counts) as to EY and as to the other Defendants, there was no practical impediment to proceeding with this appeal without the participation of First NBC.[30] On October 17, 2017, a panel of the Fifth Circuit granted EY's motion and severed First NBC, Ryan, and Verdigets from this appeal and allowed the appeal to proceed only as to EY.[31] The Fifth Circuit denied EY's alternative suggestion that the appeal be severed only as to First NBC, finding this portion of the motion to sever was moot.[32] The Fifth Circuit gave no reasons for its ruling and has never clarified whether the appeal was suspended, stayed, or in abeyance with respect to First NBC, Ryan, and Verdigets or whether there is any material difference between these terms.

The Fifth Circuit issued a new briefing schedule as to Lead Plaintiffs' appeal against EY on the same day, October 17, 2017.[33] One month later, on November 17, 2017, Lead Plaintiffs filed a Stipulation of Dismissal Under FRAP 42(b) with Respect to Defendant-Appellee EY.[34] On November 20, 2017, the Fifth Circuit Clerk of Court granted the unopposed motion and dismissed Lead Plaintiffs' appeal against EY.[35]

On April 11, 2018, the Fifth Circuit sent a letter to the remaining parties in which it asked whether the Bankruptcy Court's Order dated April 10, 2018 had any effect on the appeal.[36] In that order, the Bankruptcy Court approved a compromise that settled the

---

[29] *Id.*, Doc. 00514158195 at p. 2.
[30] *Id.*, Doc. 00514167984.
[31] *Id.*, Doc. 00514197796
[32] *Id.*
[33] *Id.*, Doc. 00514197861.
[34] *Id.* Doc. 00514242652.
[35] *Id.*, Doc. 00514242920.
[36] *Id.*, Doc. 00514424025.

"Georgia litigation" – or, all of the claims of the claimants who resided in that state and were covered under insurance policies through First NBC.[37] On April 18, 2018, Appellees and Lead Plaintiffs informed the Fifth Circuit that the resolution of the Georgia litigation had no effect on the current appeal. [38]

On August 5, September 17, and November 16, 2020, Lead Plaintiffs notified the Fifth Circuit that the Bankruptcy Court had issued status reports in which the Bankruptcy Court extended the deadline for the occurrence of the Effective Date of the Plan of Reorganization of First NBC, at first until September 14, 2020, November 11, 2020, and then until January 29, 2021.[39] In those status reports, Lead Plaintiffs informed the Fifth Circuit that, after the Plan of Reorganization was confirmed, they intended to file a motion to reopen this lawsuit in this Court under Federal Rules of Civil Procedure 60(b) and 62.1.[40]   On January 22, 2021, First NBC and the Official Committee of Unsecured Creditors filed a Joint Notice of the Occurrence of the Effective Date and Funding of Chapter 11 Plan of Reorganization  ("the notice").[41] The notice advised the Effective Date of First NBC's Plan of Reorganization was January 22, 2021.[42] On January 28, 2021, Lead Plaintiffs sent a status report/letter to the Fifth Circuit confirming the Plan of Reorganization had become effective.[43] According to the Plan of Reorganization, the automatic stay terminated on January 22, 2021, the effective date of the plan.[44] On January 29, 2021, the Fifth Circuit sent a letter to all parties informing them that briefing

---

[37] *In re First NBC Bank Holding Co.*, Bankr. A. No. 17-11213, (E.D. La. Bankr. Apr. 10, 2018), R. Doc. 380.
[38]  *Cent. Laborers Pension Fund, et al. v. First NBC Bank Holding Co.*, No. 17-30443, Docs. 00514434895, 00514435771 (5th Cir. April 18, 2018).
[39] *Id.*, Docs. 00515516151, 00515568327, 00515639279.
[40] *See id.*
[41] *In re First NBC Bank Holding Co.*, Bankr. A. No. 17-11213, (E.D. La. Bankr. Jan. 22, 2021), R. Doc. 949.
[42] *Id.*
[43] *Cent. Laborers Pension Fund, et al. v. First NBC Bank Holding Co.*, No. 17-30443, Doc. 00515724517 (5th Cir. Jan. 28, 2021).
[44] *Id.*

had resumed and providing dates for the briefing schedule.[45] On January 28, Lead Plaintiffs filed a status report advising the Fifth Circuit that they had filed their Rule 60(b) and 62.1 motions in this Court and asking the Fifth Circuit to allow proceedings in the appeal to remain "suspended."[46] On February 5, 2021, Lead Plaintiffs filed Appellants' Unopposed Motion for a Stay of Further Proceedings Pending the District Court's Consideration of Their Motion to Open the Judgment, specifically averring that Defendants did not oppose the relief sought by Lead Plaintiffs in the motions.[47] With no explanation given, on February 8, 2021, the Fifth Circuit granted the Lead Plaintiffs' Appellants' Unopposed Motion for a Stay of Further Proceedings Pending the District Court's Consideration of Their Motion to Open the Judgment.[48]

### III.    The Criminal Investigation and Its Findings

The United States Attorney's Office for the Eastern District of Louisiana, the Federal Bureau of Investigation, the Office of Inspector General of the Federal Reserve System's Consumer Financial Protection Bureau, and the Office of Inspector General of the Federal Deposit Insurance Corporation investigated First NBC, Ryan, and his alleged co-conspirators. On July 10, 2020, more than three years after this Court's dismissal of Lead Plaintiffs' amended complaint on May 11, 2017, the three-year long investigation of First NBC culminated in a 46-count indictment of Defendant Ryan and two other Bank executives for conspiracy to commit bank fraud, bank fraud, and false entries (the "Indictment").

Much of the information eventually learned by Lead Plaintiffs regarding the collapse of First NBC was derived from the bills of information, indictments, and factual

---

[45] *Id.*, Doc. 00515725854.
[46] *Id.,* Doc. 00515724517.
[47] *Id.*, Doc. 00515735497. Defendants did not refute this representation.
[48] *Id.*, Doc. 00515737085.

bases filed in the criminal proceedings involving Ryan and his alleged co-conspirators. Ryan's co-conspirators were identified as First NBC's former Chief Credit Officer, William J. Burnell; a former bank Executive Vice President, Robert B. Calloway, who served as a commercial relationship manager; two real estate developers, Gary Gibbs and Kenneth Charity; a borrower who was also the bank's General Counsel, Gregory St. Angelo; a factoring business owner, Frank Adolph; a hotel owner, Arvind Vira; and two contractors, Jeffrey Dunlap and Warren Treme.  Six of these borrowers have since entered pleas of guilty to criminal charges in separate criminal cases: Gregory St. Angelo; Jeffrey Dunlap; Kenneth Charity; Gary Gibbs; Warren Treme; and Arvind Vira. The bills of information for Gregory St. Angelo; Jeffrey Dunlap; Kenneth Charity; Gary Gibbs; Warren Treme; and Arvind Vira were dated between May 14, 2018 and August 8, 2020. The factual bases supporting these borrowers' guilty pleas were executed between October 17, 2018 and August 26, 2020.

The various indictments provide extensive details of Ryan's banking relationships with each of seven identified bank borrowers, and charge that Ryan and others "masked the true financial condition of troubled loans in many ways, including (1) overdrawing demand deposit accounts to make loan payments; (2) using Bank loan proceeds from nominee and related entities, at times without authorization from the borrower, to make loan payments; and (3) increasing, extending, or renewing existing loans, and issuing new loans, to hide borrowers' inability to make loan payments. These actions benefitted the co-conspirators by, among other things, preventing the borrowers from being forced into default and the bank from declaring a loss."

For example, in court documents associated with his guilty plea, St. Angelo admitted on June 28, 2019, among other misconduct, that he and Ryan executed false tax

credit purchase agreements that were used to cover overdrafts and loan payments, and that they presented false statements about the purposes of loan applications while "knowing the stated purpose was false."  St. Angelo was paid $9.6 million for these fake tax credit investments on top of $46 million he received in fraudulent loans.  Dunlap admitted that he was instructed by Ryan to inflate his company's accounts receivable in order to increase the borrowing base on a Letter of Credit issued to the company. Moreover, Dunlap admitted that Ryan told him that he did not need to age his accounts receivable, which directly contradicted bank policy and bank documents Dunlap signed. Charity admitted that Ryan knowingly and intentionally submitted false financial statements about Charity's assets to the bank in support of loans, including that Ryan had prepared a 2011 tax return for Charity and his wife for Charity's First NBC bank loan file, even though IRS records show that Charity "did not file a tax return in 2011."

Gibbs admitted that, when he told Ryan that he was considering filing bankruptcy or not paying his loans, Ryan told Gibbs that First NBC could not afford for Gibbs to default on the loans. Thereafter, Ryan and other bank executives continued to make false statements and material omissions in loan documents to hide from the Board, auditors, and examiners that the purpose of the new loans was to keep Gibbs and his entities from defaulting.  Treme, co-owner of several entities with Ryan, admitted that he (Treme) was granted loans even though he lacked sufficient income and cash flow from his businesses to pay his loans and personal expenses.  Vira admitted that Ryan provided him with preferential treatment, including low interest rates for loans and high interest rates for Vira's savings and checking accounts, and was instructed by Ryan to inflate his assets on bank loan documents.  He further admitted that in exchange, Vira provided personal loans to Ryan at Ryan's request, and to conceal the loans that he made to Ryan, Vira

misrepresented or omitted the interest payments he received from Ryan on his personal tax returns from 2011 through 2015, which amounted to approximately $1.2 million in profits.  This is just a smattering of the facts revealed during Ryan's and his co-conspirators' criminal investigation.

In the Fifth Circuit, "[t]he required state of mind [for scienter] is an intent to deceive, manipulate, defraud or severe recklessness."[49] The allegations the Lead Plaintiffs wish to include in a second amended complaint are based on information learned as a result of the investigation, criminal charges, and guilty pleas described above. Those allegations relate to whether First NBC, Ryan, and Verdigets intended "to deceive, manipulate, or defraud"[50] First NBC's shareholders.[51] None of the facts outlined in this section was before the trial court at the time it rendered its judgment of dismissal for the Lead Plaintiffs' failure to plead scienter.

## IV.   The Automatic Bankruptcy Stay Did Not Toll the Time for Filing Motions under Rule 60(b).

The Lead Plaintiffs argue the time period for them to file motions for relief under Federal Rule of Civil Procedure 60(b) was tolled by the filing of the notice of bankruptcy stay in the trial court and by the actions of the Fifth Circuit during the appeal. The Defendants contest whether the Lead Plaintiffs timely filed their motion under Rule 60(b)(2) and (b)(6).

Rule 60(b)(2) allows a court  to "relieve a party or its legal representative from a final judgment, order, or proceeding" on the ground of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial

---

[49] *Owens v. Jastrow*, 789 F.3d 529, 535-36 (5th Cir. 2015) (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009) (internal quotation marks and citation omitted)).
[50] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 and n.12 (1976)); *see* 15 U.S.C. § 78u-4(b)(1), (2).
[51] 15 U.S.C. § 78u-4(b)(2).

under Rule 59(b)."[52] Defendants argue the Lead Plaintiffs' motion for relief from the May 11, 2017 judgment under Rule 60(b)(2) is untimely. Defendants rely on Rule 60(c)(1), which provides a motion under Rule 60(b)(1), (b)(2), and (b)(3) shall be made "no more than a year after the entry of the judgment or order or the date of the proceeding."[53] Judgment in this case was entered on May 11, 2017, and Lead Plaintiffs did not file their Rule 60(b)(2) motion until January 27, 2021,[54] over three and one-half years slater. Defendants argue there is no legal authority to justify abdication of the one-year limit in this case. Defendants are correct; on the face of the rule, Lead Plaintiffs' motion under Rule 60(b)(2) is patently untimely.

Lead Plaintiffs argue the First NBC bankruptcy tolled the time period for them to file their Rule 60(b)(2) motion.[55]  Lead Plaintiffs provide the Court with no support for their argument, however, in the face of the clear language in Rule 60(c)(1) – *i.e.*, that a Rule 60(b)(2) motion "*must* be filed *no more than a year* after the entry of judgment or order or date of the proceeding."[56] Lead Plaintiffs argue only – in a footnote –

> [P]ursuant to Fed. R. Civ. P. 60(c), a motion under Rule 60(b)(2) must be made within one year of the entry of the judgment. Lead Plaintiffs submit that their Rule 60(b)(2) motion is timely given that they were unable to file such a motion while the bankruptcy stay was in effect. Excluding the duration of the bankruptcy stay, the motion has been brought less than 365 days from when the Judgment was entered. To the extent the Court finds that Lead Plaintiffs' motion under Rule 60(b)(2) is precluded by Rule 60(c), Lead Plaintiffs, as discussed in § III.C, *infra*, submit that their motion is also appropriate under Rule 60(b)(6), which has no such time limit.[57]

---

[52] Fed. R. Civ. P. 60(b)(2).
[53] Fed. R. Civ. P. 60(c)(1).
[54] R. Doc. 138.
[55] R. Doc. 162 at pp. 25-30.
[56] Fed. R. Civ. P. 60(c)(1) (emphasis added).
[57] R. Doc. 140-1 at 35 at n.5. Section III.C, in turn, discusses Rule 15(a)(2) and has no bearing on the tolling or suspension of time limits under Rules 60(b) and (c).

Lead Plaintiffs cite to no case law, no statute, no regulation, and no rule to support their position that the one-year time limit in Rule 60(c)(1) is suspended, stayed, or tolled by an automatic bankruptcy stay.

Finally, Lead Plaintiffs contend that, even had they filed their Rule 60(b)(2) motion in this Court, the lawsuit was then on appeal, and this Court had been divested of jurisdiction to even consider a Rule 60(b)(2) motion at that point.[58] While this may well be true,[59] this did not leave Lead Plaintiffs with no options, yet Lead Plaintiffs failed to take any action to preserve their rights.[60]

## V.   On remand, the Court would find the Rule 60(b)(6) motion was timely filed.

A Rule 60(b)(6) motion must merely be filed within "a reasonable period of time."[61] "What constitutes a reasonable time under Rule 60(b) depends on the particular facts of the case in question."[62] There have been many instances in the Fifth Circuit when courts have approved the filing of a Rule 60(b)(6) motion years after the entry of judgment. For example, in *United States v. 119.67 Acres of Land*,[63] the United States entered into a stipulation with the leasehold owners in a condemnation proceeding. The stipulation was entered as the judgment of the court.[64] Four years later, the United States moved to set aside the stipulation-judgment on the ground that the area condemned was subject to a navigational servitude in favor of the government, that could not be deprived absent

---

[58] R. Doc. 162 at p. 26.

[59] *See, e.g., Shepherd v. Int'l Paper Co.*, 372 F.3d 326 (5th Cir. 2004) (vacating district court's grant of Rule 60(b) motion when case is on appeal).

[60] This Court need not address whether Lead Plaintiffs' Rule 60(b)(2) motion presented any newly discovered evidence because the Court finds the motion was untimely filed.

[61] Fed. R. Civ. P. 60(c)(1).

[62] *Fed. Land Bank v. Cupples Bros.*, 889 F.2d 764, 767 (8th Cir. 1989).

[63] 663 F.2d 1328 (5th Cir. 1981).

[64] *Id.* at 1329.

Congressional authority.[65] Treating the motion as a Rule 60(b)(6) motion, the Fifth Circuit held that

> [w]hile four years is certainly a considerable length of time [to file the motion], we recognize the possibility that until the navigational servitude was asserted, the United States would have no reason to realize that it had been compromised. Given the significant governmental and public rights involved in this controversy, we find that the motion was filed within a reasonable time and, for that reason, should not be dismissed as untimely.[66]

In this case, the Bankruptcy Court entered its Order Confirming Second Amended Joint Chapter 11 Plan of Reorganization for First NBC on January 22, 2021,[67] at which time the Lead Plaintiffs were free to proceed with this litigation against First NBC, Ryan, and Verdigets. Lead Plaintiffs filed their Request for an Indicative Ruling Pursuant to Rule 62.1 on January 28, 2021.[68] On February 8, 2021, the Fifth Circuit granted Lead Plaintiffs' unopposed motion to stay further proceedings in that court pending this Court's consideration of the request for an indicative ruling under Rule 62.1.[69]  As noted above, what constitutes a reasonable period of time depends upon the particular facts of the case in question.[70] If remanded, this Court would find that, under the factual circumstances and procedural posture of this case, Lead Plaintiffs' Rule 60(b)(6) motion was filed within a reasonable period of time. As a result, the Court would find the Rule 60(b)(6) motion is timely.

---

[65] *Id.* at 1330.

[66] *Id.* at 1331.

[67] The Second Amended Joint Chapter 11 Plan of Reorganization, which ended the bankruptcy proceeding, took effect on January 22, 2021. R. Doc. 138-5 at p. 17.

[68] R. Doc. 140-2. As noted in note 2, also pending is Lead Plaintiffs' Motion from Relief of the Court's May 11, 2017 Judgment Pursuant to Fed. R. Civ. P. 60(b). Lead Plaintiffs move that the May 11, 2017 Judgment be vacated and Lead Plaintiffs be allowed to file a second amended complaint. R. Doc. 140.

[69] *Cent. Laborers' Pension Fun, et al. v. First NBC Bank Holding Co., et al.*, Docket No. 17-30443, Document:00515737085 (5th Cir. Feb. 8, 2021)

[70] *Cupples Bros.*, 889 F.2d at 767 ("What constitutes a reasonable time under Rule 60(b) depends on the particular facts of the case in question.").

**VI.    On remand, the Court would find the Lead Plaintiffs have raised substantial issues with respect to whether there are "other reasons" that justify relief under Rule 60(b)(6).**

Rule 60(b)(6) provides:

(b)    Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and  just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . .

(6)    Any other reason that justifies relief.[71]

The totality of the unusual factual and procedural circumstances that have plagued this lawsuit since its inception leads the Court to conclude Lead Plaintiffs have raised substantial issues with regard to whether there are other reasons under Rule 60(b)(6) that justify granting them relief from the May 11, 2017 judgment dismissing their claims with prejudice for failure to plead scienter.

"Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and *is not premised* on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).[72] That is, Rule 60(b)'s provisions are "mutually exclusive" to the extent that subsection (6) cannot be used to avoid the one-year limitation in subsections (1)-(5), such that "a party who failed to take timely action due to 'excusable neglect' [within one year] may not seek relief more than a year after the judgment by resorting to subsection (6)."[73] The Fifth Circuit complies with this case law.[74] Accordingly,

---

[71] Fed. R. Civ. P. 60(b)(6).

[72] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 868 (1988).

[73] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993); *see also Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1116 (D.C. Cir. 2011); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988).

[74] *Brittingham v. Wells Fargo Bank, N.A.*, 543 F. App'x 372, 374 (5th Cir. 2013) ("Plaintiffs also seek relief under Rule 60(b)(6). However, "the catch-all clause of Rule 60(b)(6) cannot be invoked when relief is sought under one of the other grounds enumerated in Rule 60." *Hess v. Cockrell*, 281 F.3d 212, 215 (5th Cir. 2002) (quotation marks omitted).").

because the Rule 60(b)(2) motion is untimely, Lead Plaintiffs cannot rely on "newly-discovered evidence" to reap the benefits of Rule 60(b)(6)'s more flexible "reasonable time limit."

Relief under Rule 60(b)(6)'s "catchall" provision is available "only if extraordinary circumstances are present."[75] The movant bears the burden of establishing at least one of Rule 60(b)'s bases for relief.[76] Rule 60(b)(6) is "'a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances.'"[77] Motions under this clause "will be granted only if extraordinary circumstances are present."[78]

"[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion. A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[79] "The discretion under 60(b)(6) is said to be *especially broad* because relief may be granted under it when appropriate to accomplish justice."[80]

The circumstances under which courts have granted or denied motions under Rule 60(b)(6) run the gamut of oddly unusual legal situations. In *Steverson v. Global SantaFe Corp.*, for example, the Fifth Circuit vacated the denial of a seaman's Rule 60(b)(6) motion after settlement was confected because the negotiations surrounding the settlement were suspect:

---

[75] *Hess*, 281 F.3d at 216.

[76] *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) (*abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

[77] *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quoting *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 604-05 (5th Cir. 1986)).

[78] *Bernal*, 2018 WL 9815587, at *2; *Hess*, 281 F.3d 216.

[79] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (alteration in original) (internal quotations and citations omitted).

[80] *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992) (emphasis added).

> We also find troubling the circumstances of the settlement negotiations. The attorneys were in chambers discussing settlement with the magistrate judge but Steverson, the plaintiff-seaman, was in a different room. The court did not question Steverson regarding whether he agreed to the amount of the settlement. No record of the settlement was taken by the court. Additionally, there is no written authorization for Jenner to accept a settlement of $350,000 on behalf of Steverson. We cast no aspersions on Jenner. Nonetheless, there should be evidence in the record from the seaman indicating he knowingly relinquished his rights and had a full appreciation of the consequences at the time of the settlement. Here, the record contains no such evidence from Steverson.[81]

In *Lindy Investments III v. Shakertown 1992, Inc.*, the Fifth Circuit upheld the district court's grant of the defendant's Rule 60(b)(6) based on extraordinary circumstances.[82] In *Lindy* – a product manufacturing case – the district court concluded that it was patently unfair to the defendants for the plaintiff to keep the allegedly defective product and continue to use it for eight years before ultimately suing for restoration of the purchase price.[83]

There is no firm definition of what constitutes "extraordinary circumstances" for purposes of Rule 60(b)(6), but under the case law, this Court keeps in mind the ultimate purpose of Rule 60 in all its facets is to accomplish justice. In *Seven Elves, Inc. v. Eskenazi*,[84] the Fifth Circuit set forth the following factors to consider when evaluating such a motion: (1) that final judgments should not lightly be disturbed; (2) that a Rule 60(b) motion should not be used as a substitute for appeal; (3) that the rule should be

---

[81] *Steverson*, 508 F.3d at 304.

[82] 360 F. App'x 510, 513 (5th Cir. 2010).

[83] *See id.*; *see also Boughner v. Sec. of Health, Education & Welfare*, 572 F.2d 976, 978–79 (3d Cir. 1978) (finding extraordinary circumstances and granting Rule 60(b)(6) relief because defendant's attorney engaged in a pattern of failing to oppose motions for its client); *L.P. Stuart, Inc. v. Matthews*, 329 F.2d 234, 235 (D.C. Cir. 1964) (holding the district court did not abuse its discretion in granting a Rule 60(b)(6) motion based on appellee's former counsel's failure to prosecute); *Copeland v. D&J Constr., L.L.C.*, No. 3:13-CV-4432, 2016 WL 816144 (N.D. Tex. Dec. 9, 2016) (granting Rule 60(b)(6) motion and reopening action when defendants failed to satisfy settlement agreement and failed to respond to plaintiff's motion to reopen); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 783, 2011 WL 6748489 (E.D. La. Dec. 21, 2011) (vacating order and reasons under all the circumstances based on attorney error in a large and complex case after concluding the evidence would have resulted in a different outcome).

[84] 635 F.2d 396 (5th Cir. 1981).

16

liberally construed in order to achieve substantial justice; (4) whether, if the case was not decided on its merits due to a default or dismissal, the interest in deciding the case on its merits outweighs the interest in the finality of the judgment and there is merit in the claim or defense; (5) whether, if the judgment was rendered on the merits, the movant had a fair opportunity to present his claims; (6) whether there are intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.[85]

When considering the *Seven Elves* factors, the Court is mindful that final judgments should not lightly be disturbed.  Lead Plaintiffs filed an appeal of the final judgment. As a result, there can be no suggestion that Lead Plaintiffs used their Rule 60(b)(3) motion as a substitute for appeal. Were the Court to grant the Rule 60(b)(6) motion after further briefing, the Court finds that substantial justice would be achieved given that Lead Plaintiffs were never given a full and fair opportunity – at the dismissal stage of their lawsuit – to present the trial court with the merits of their claims. The trial court dismissed this lawsuit at the pleading stage with Lead Plaintiffs unaware of all the actions of Ryan and his co-conspirators that ultimately led to the collapse of First NBC. Having reviewed all of the pleadings and all of the documents, the Court finds the interest in deciding the case on its merits may well outweigh the interest in preserving the finality of the judgment, as there appears to be merit in Lead Plaintiffs' claim that the Defendants had the requisite scienter given what they have learned from the three-year long criminal investigation.  In short, the entire set of extraordinary circumstances surrounding the genesis of this lawsuit and the profusion of proceedings – at one time occurring

---

[85] *Id.* at 402. The Fifth Circuit applies *Seven Elves* and its factors to civil actions involving Rule 60(b)(6) motions. *See Associated Marine Equip., L.L.C. v. Jonses*, 301 F. App'x 346, 348-51 (5th Cir. 2008).

simultaneously in three separate courts – may well present extraordinary circumstances justifying relief under Rule 60(b)(6).

## VII.   Rule 62.1 applies in this case.

Over three and one-half years after dismissal, on January 22, 2021, the Bankruptcy Court entered an Order Confirming Second Amended Joint Plan of Reorganization for First NBC.[86] On January 28, 2021, Lead Plaintiffs filed in this action their Request for an Indicative Ruling Pursuant to Rule 62.1. On February 8, 2021, the Fifth Circuit granted Lead Plaintiffs' unopposed motion to stay further proceedings in that court pending this Court's consideration of the request for an indicative ruling under Rule 62.1.[87]

Ordinarily, this Court would have no jurisdiction to consider a motion for relief from the May 11, 2017 judgment under Rule 60(b)(6) given the pending appeal to the Fifth Circuit.[88] However, Rule 62.1 provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.[89]

Under Rule 62.1, the Court has jurisdiction to entertain the Lead Plaintiffs' Rule 62.1 motion.[90]

---

[86] The Second Amended Joint Chapter 11 Plan of Reorganization, which ended the bankruptcy proceeding, took effect on January 22, 2021. R. Doc. 138-5 at p. 17.

[87] *Cent. Laborers' Pension Fun, et al. v. First NBC Bank Holding Co., et al.*, Docket No. 17-30443, Doc. No. 0051573708530443 (5th Cir. Feb. 8, 2021).

[88] Once the notice of appeal has been filed, while the district court may consider or deny a Rule 60(b) motion (filed more than ten days after entry of the judgment), it no longer has jurisdiction to grant such a motion while the appeal is pending. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 329 (5th Cir. 2004) (citing *Winchester v. United States Atty. for S.D. of Tex.*, 68 F.3d 947, 949 (5th Cir.1995)). "'When the district court is inclined to grant the 60(b) motion, . . . then it is necessary to obtain the leave of the court of appeals. Without obtaining leave, the district court is without jurisdiction, and cannot grant the motion.'" *Winchester*, 68 F.3d at 949 (quoting *Liljeberg Enters. Inc.*, 38 F.3d at 1407 n.3 ).

[89] Fed. R. Civ. P. 62.1(a)(1)-(3).

[90] *Id.*

## CONCLUSION

For the foregoing reasons,

The Court finds this is a proper Rule 62.1 motion for relief from a judgment of dismissal under Rule 60(b). An appeal of the judgment of dismissal has been docketed and is pending.[91]

**IT IS ORDERED** that the Rule 62.1 motion is **DENIED** as it relates to the Rule 60(b)(2) motion because the Rule 60(b)(2) motion is untimely under the one-year time limit of Rule 60(c)(1).

The Court states that, if remanded, the Court would find this Rule 62.1 motion has raised substantial issues with respect to whether Lead Plaintiffs should be granted relief from the judgment of dismissal under Rule 60(b)(6) and be allowed to amend their complaint to include allegations that First NBC, Ryan, and Verdigets acted with the required state of mind or scienter to deceive, manipulate, or defraud under the PSLRA.

The Court further states that, if remanded, the Court would find that Lead Plaintiffs' Rule 60(b)(6) motion was timely filed.

The parties shall forthwith notify the Fifth Circuit in accordance with Rule 62.1(b).

**New Orleans, Louisiana this 19th day of July, 2021.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[91] R. Doc. 140.

19